# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE No.: 1:21-cv-20745

IGNACIO MORALES, JORGE MORALES,
LAZARO MORALES and LAZARO MORALES
as Personal Representative of the Estate of
TEOFILO MORALES, SR.,

                Plaintiffs,

v.

MIAMI-DADE COUNTY, Individually and in                    <u>Jury Trial Demanded</u>
their official capacities, JUAN PEREZ, LUIS
SIERRA, INGRID RIZZO, BRYAN YOUNG,
HUNTER GRIMM, CHRISTOPHER MCKIE,
LEONARDO MEMBRENO, JOSEPH
VALLEJOS, DALTON CLARK, JORGE
ENCINOSA, BRIAN SORREL, ABRAHAM
FERNANDEZ and DAVID KOIVU,

                Defendants.

_____/

## <u>COMPLAINT</u>

Plaintiffs, Lazaro Morales as Personal Representative of the Estate of Teofilo Morales Sr.,

Jorge Morales, Ignacio Morales, and Lazaro Morales, by and through their undersigned attorneys,

Vargas Gonzalez Hevia Baldwin, LLP, hereby file this Complaint against the Defendants, Miami-

Dade County, individually and in their official capacities, Juan Perez, Luis Sierra, Ingrid Rizo,

Bryan Young, Hunter Grimm, Christopher McKie, Leonardo Membreno, Joseph Vallejos, Dalton

Clark, Jorge Encinosa, Brian Sorrel, Abraham Fernandez and David Koivu, and state as follows:

## <u>PRELIMINARY STATEMENT</u>

1.     This is a civil rights action, in which Plaintiffs seek relief through 42 U.S.C. § § 1983 and

1988 for injuries sustained from the violations of their civil rights, pursuant to the Fourth and

Fourteenth Amendments to the Constitution of the United States and the laws of the State of Florida.

2.     These claims arise from a February 24, 2017 incident, in which defendants, acting under color of state law, unlawfully arrested and detained plaintiffs, Teofilo Morales Sr., Jorge Morales, Ignacio Morales and Lazaro Morales (hereinafter referred to as "the Plaintiffs," when referenced collectively), without a valid judicially authorized warrant or probable cause. The Plaintiffs were subsequently maliciously prosecuted for Battery on a Law Enforcement Officer, a Felony, Resisting Arrest Without Violence, a Misdemeanor, and Assault on a Police Officer, a Misdemeanor. As a result, the Plaintiffs were wrongfully incarcerated at the Turner Guilford Knight Correctional Facility. The malicious prosecutions persisted, despite any probable cause to justify the initiation of said criminal proceedings and defendants' full awareness of such.

3.     Plaintiffs have complied with all required conditions precedent prior to commencing the instant action and claims, including those set forth by Florida Statute Chapter 768.

4.     As a direct and proximate result of the acts of Defendants, Plaintiffs sustained the following injuries and damages: deprivations of their rights pursuant to the Fourth and Fourteenth Amendment of the United States Constitution, violations of the laws and Constitution of the State of Florida, loss of liberty, reputational harm, monetary loss, physical injury, physical pain and suffering, as well as emotional and psychological trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, and anxiety.

5.     Plaintiffs seek monetary damages (compensatory and punitive) against Defendants, an award of costs and attorneys' fees, in addition to such other and further relief, as the Court may deem just and proper.

## JURISDICTION

6.     This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, under 42 U.S.C. §§ 1983 and 1988, as well as the Constitution and Laws of the State of Florida.

7.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of supplemental jurisdiction.

## VENUE

8.     Venue is laid within the Southern District of Florida in that Defendant Miami-Dade County is located within and a substantial part of the events giving rise to the claims occurred within the boundaries of the Southern District. 28 U.S.C. § 1391 (b) and (c).

9.     Plaintiffs, Jorge Morales ("Jorge"), Ignacio Morales ("Ignacio"), and Lazaro Morales ("Lazaro") are and were at all times material herein, residents of Miami-Dade County, Florida and citizens of the United States.

10.     Lazaro Morales is the Personal Representative of the Estate of Teofilo Morales, Sr ("Teofilo Sr."). Plaintiff has been granted letters of administration by the 11th Judicial Circuit in and for Miami-Dade County, Florida, attached hereto as **Exhibit A**. Thus, Plaintiff is authorized pursuant to Fla. Stat. § 46.021 to bring the survivor claims asserted below against the Defendant.

11.     Defendant, Miami-Dade County ("County"), is created and authorized pursuant to the laws and Constitution of the State of Florida. Defendant County is authorized by law to maintain a Police Department, known as the Miami-Dade Police Department (MDPD), which serves as the means by which Defendant County fulfills its policing function, and for which Defendant County is responsible and liable.

12.     At all times relevant hereto, Defendant County, acting through the MDPD, was responsible for the policy, practice, supervision, implementation, and conduct of all MDPD matters and was responsible for the appointment, hiring, training, supervision, discipline and retention and conduct of all MDPD personnel, including police officers, deputies, corporals, detectives, and supervisory officers as well as the individually named MDPD Defendants herein.

13.     In addition, at all times here relevant, Defendant County was responsible for enforcing the rules of the MDPD, and for ensuring that the MDPD personnel obey the laws of the United States and the State of Florida.

14.     Defendant, Juan J. Perez ("Perez"), was, at all relevant times herein, the Director of MDPD and as such was acting in the capacity of an agent, servant and employee of Miami-Dade County. Defendant Perez enjoyed final policymaking authority with respect to public safety, policing, and law enforcement matters for Defendant County. Defendant Perez was, at all relevant times herein, responsible for the training, discipline, and supervision of all Miami-Dade County Police Department's law enforcement personnel, including the named MDPD defendants herein. Defendant Perez is being sued in his individual and official capacities.

15.     Defendant, Luis Sierra ("Sierra"), was, at all relevant times herein, a deputy, officer, corporal, or sergeant employed by the MDPD and as such was acting in the capacity of an agent, servant and employee of defendant County. Defendant Sierra was, at all relevant times herein, a deputy, officer, corporal, or detective. Defendant Sierra is being sued in his individual and official capacities.

16.     Defendant, Ingrid Rizzo ("Rizzo"), was, at all relevant times herein, a deputy, officer, corporal, or sergeant employed by the MDPD and as such was acting in the capacity of an agent, servant and employee of defendant County. Defendant Rizzo was, at all relevant times herein, a

deputy, officer, corporal, or detective. Defendant Rizzo is being sued in her individual and official capacities.

17.     Defendant, Bryan Young ("Young"), was, at all relevant times herein, a deputy, officer, corporal, or sergeant employed by the MDPD and as such was acting in the capacity of an agent, servant and employee of defendant County. Defendant Young was, at all relevant times herein, a deputy, officer, corporal, or detective. Defendant Young is being sued in his individual and official capacities.

18.     Defendant, Hunter Grimm ("Grimm"), was, at all relevant times herein, a deputy, officer, corporal, or sergeant employed by the MDPD and as such was acting in the capacity of an agent, servant and employee of defendant County. Defendant Grimm was, at all relevant times herein, a deputy, officer, corporal, or detective. Defendant Grimm is being sued in his individual and official capacities.

19.     Defendant, Christopher McKie ("McKie"), was, at all relevant times herein, a deputy, officer, corporal, or sergeant employed by the MDPD and as such was acting in the capacity of an agent, servant and employee of defendant County. Defendant McKie was, at all relevant times herein, a deputy, officer, corporal, or detective. Defendant McKie is being sued in his individual and official capacities.

20.     Defendant, Leonardo Membreno ("Membreno"), was, at all relevant times herein, a deputy, officer, corporal, or sergeant employed by the MDPD and as such was acting in the capacity of an agent, servant and employee of defendant County. Defendant Membreno was, at all relevant times herein, a deputy, officer, corporal, or detective. Defendant Membreno is being sued in his individual and official capacities.

21.     Defendant, Joseph Vallejos ("Vallejos"), was, at all relevant times herein, a deputy, officer, corporal, or sergeant employed by the MDPD and as such was acting in the capacity of an agent, servant and employee of defendant County. Defendant Vallejos was, at all relevant times herein, a deputy, officer, corporal, or detective. Defendant Vallejos is being sued in his individual and official capacities.

22.     Defendant, Dalton Clark ("Clark"), was, at all relevant times herein, a deputy, officer, corporal, or sergeant employed by the MDPD and as such was acting in the capacity of an agent, servant and employee of defendant County. Defendant Clark was, at all relevant times herein, a deputy, officer, corporal, or detective. Defendant Clark is being sued in his individual and official capacities.

23.     Defendant, Jorge Encinosa ("Encinosa"), was, at all relevant times herein, a deputy, officer, corporal, or sergeant employed by the MDPD and as such was acting in the capacity of an agent, servant and employee of defendant County. Defendant Encinosa was, at all relevant times herein, a deputy, officer, corporal, or detective. Defendant Encinosa is being sued in his individual and official capacities.

24.     Defendant, Brian Sorrel ("Sorrel"), was, at all relevant times herein, a deputy, officer, corporal, or sergeant employed by the MDPD and as such was acting in the capacity of an agent, servant and employee of defendant County. Defendant Sorrel was, at all relevant times herein, a deputy, officer, corporal, or detective. Defendant Sorrel is being sued in his individual and official capacities.

25.     Defendant, Abraham Fernandez ("Fernandez"), was, at all relevant times herein, a deputy, officer, corporal, or sergeant employed by the MDPD and as such was acting in the capacity of an agent, servant and employee of defendant County. Defendant Fernandez was, at all relevant times

herein, a deputy, officer, corporal, or detective. Defendant Fernandez is being sued in his individual and official capacities.

26.     Defendant, David Koivu ("Koivu"), was, at all relevant times herein, a deputy, officer, corporal, or sergeant employed by the MDPD and as such was acting in the capacity of an agent, servant and employee of defendant County. Defendant Koivu was, at all relevant times herein, a deputy, officer, corporal, or detective. Defendant Koivu a is being sued in his individual and official capacities.

## **FACTUAL CHARGES**

27.     In the afternoon of February 24, 2017, Teofilo Morales, Jr. (a relative to the Plaintiffs who suffered from schizophrenia) was performing maintenance to his car at the Morales family home at 11310 SW 125th Place in Miami, Florida.

28.     At approximately 18:06 hours, Defendants, including Membreno, Vallejos, and McKie, of the MDPD arrived at the Morales family home in an aggressive and confrontational manner.

29.     As Defendants, including Membreno, Vallejos and McKie, aggressively approached the Morales family home, Teofilo Morales Jr. became startled and confused, before walking from his car in the driveway to the front porch.

30.     At all times herein mentioned, the named Plaintiffs were in obeyance of laws, local ordinances, rules and regulations.

31.     Plaintiff Lazaro, upon observing his brother, Teofilo Morales, Jr., in possession of a firearm, proceeded to wrestle the gun out of Teofilo Morales, Jr.'s hands and throw it for the officer's retrieval.

32.     Plaintiffs Lazaro, Jorge, and Ignacio then attempted to deescalate the situation by trying to calm their mentally ill brother, Teofilo Morales, Jr., who was formerly in possession of said firearm.

33.     As plaintiffs Lazaro, Jorge, and Ignacio attempted to control their panicked brother, Defendants, McKie, Vallejos, and Membreno began yelling conflicting commands to the Plaintiffs with their firearms drawn.

34.     Defendants, McKie, Vallejos, and Membreno further escalated the situation by loading their weapons in a manner indicative of an intent to imminently fire upon Teofilo Morales Jr.

35.     At the above referenced date and time, Plaintiffs, Lazaro, Ignacio, and Jorge, were attempting to deescalate the situation by securing Teofilo Morales, Jr. and repeatedly informed Defendants, including Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu, that they were attempting to resolve the matter as quickly and peacefully as possible.

36.     Despite Teofilo Morales, Jr. being disarmed and no longer posing any threat, Defendants, including Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu, became visibly enraged that the situation had not ended as quickly as they would have liked and ordered the Plaintiffs to exit the home.

37.     At approximately 18:17:30, plaintiff Lazaro fully complied with defendants' orders, but was still wrongfully arrested, physically restrained and handcuffed in an excessively tight manner, by, or at the direction of, Defendants, including Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu, despite the absence of probable cause or other legal justification to do so.

38.     At all material times herein, plaintiff Lazaro served as an innocent bystander to the incident, and committed no crimes or violations of the law.

39.     Defendants, including Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu, falsely alleged that plaintiff Lazaro resisted arrest without violence and assaulted on an officer of the law, and forwarded said fabricated allegations to prosecutors, or directed that such acts be done, despite said defendants' knowledge that no such events ever transpired and that there existed no probable cause to effectuate his arrest or to commence a criminal prosecution against him.

40.     As proven by video evidence and even further by the state's attorney's decision to dismiss all of the aforementioned charges, plaintiff Lazaro never committed any crimes or violations of the law, particularly those alleged by defendants, including Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu.

41.     At approximately the same time as plaintiff Lazaro's arrest, plaintiff Jorge was falsely arrested by physically restrained and handcuffed in an excessively tight manner, by, or at the direction of, Defendants, including Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu, despite the absence of probable cause or other legal justification to do so, as plaintiff Jorge was an innocent bystander, who had violated no law.

42.     At approximately 18:18:00, plaintiff Ignacio was violently slammed to the ground in a particularly aggressive and violent fashion by, or at the direction of, Defendants, including Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu, who struck his face against the concrete and then proceeded to gratuitously strike plaintiff Ignacio with fists and other hard objects.

43.     Plaintiff Ignacio was subjected to the aforementioned physical abuse prior to, during and after being physically restrained and handcuffed by, or at the direction of, defendants, including Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu.

44.     Defendants, including Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu, then fabricated or directed the fabrication of allegations against plaintiff Ignacio, which included the accusation that plaintiff Ignacio resisted arrest without violence.

45.      Defendants, including Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu, forwarded or directed the forwarding of said fictitious allegations to prosecutors, so that a criminal prosecution would be commenced against plaintiff Ignacio, despite no probable cause to do so, as the video evidence proves that plaintiff Ignacio did not commit any crimes or violations of the law and that said defendants did not have legal authority to execute process against him.

46.     At all times relevant herein, plaintiff Ignacio was an innocent bystander to the incident unfolding and did not disobey any laws or law enforcement commands.

47.     At approximately 18:24, Defendant Encinosa used his squad car speaker to order Teofilo Morales, Jr. to exit the home.

48.     Upon hearing the continued commotion, the 75-year-old, plaintiff Teofilo Morales, Sr., exited the home in a slow and non-threatening manner.

49.     As further evidence of his full compliance with law enforcement, video footage, at approximately 18:30, demonstrates plaintiff Teofilo, Sr. lifting his shirt to indicate the fact that he was unarmed and intended to peacefully comply with defendants' demands.

50.     As Teofilo Sr. exited the family home, Defendants, including Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu, began yelling conflicting commands in both English and Spanish, while aiming military-style weapons directly at plaintiff Teofilo, Sr.

51.     After exiting the home, the elder plaintiff Teofilo, Sr. complied with all law enforcement commands to the best of his ability.

52.     Plaintiff Teofilo, Sr. was an innocent bystander to the incident and was never previously outside of his residence.

53.     In a shocking and violent turn of events, plaintiff Teofilo, Sr. was slammed into the concrete ground, had his head bashed against a parked van, and then viciously abused, physically restrained and handcuffed behind in his back in an excessively tight fashion, as he screamed in pain, by, or at the direction of, defendants, including Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu.

54.     Moments later, Defendant Vallejos' bodycam recorded the already cuffed plaintiff Teofilo, Sr. being violently dragged by his arms across the concrete pavement by, or at the direction of, defendants, including Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu.

55.     Defendants, including Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu, therefore caused plaintiff Teofilo Sr. to suffer substantial physical pain and severe injuries that required medical intervention and continue to plague him to this day, all due to said defendants' flagrant and unwarranted use of excessive force.

56.     At no point did plaintiff Teofilo, Sr. resist in any manner or make affirmative physical contact with any law enforcement officer, including defendants Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu.

57.     Defendants, including Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu, fabricated or directed the fabrication of false allegations against plaintiff Teofilo, Sr., namely that plaintiff Teofilo, committed battery upon a law enforcement officer and resisted arrest, and forwarded or directed the forwarding of said fictitious accusations to prosecutors, so that a criminal prosecution would be initiated against plaintiff Teofilo, Sr.

58.     Under Florida law, the felonious crime of Battery on a Law Enforcement Officer requires either the intentional striking or touching of an officer against said officer's will or the intentional causation of bodily harm to said officer, while said officer is engaged in the lawful performance of said officer's duties.

59.     Despite dozens of bodycam video recordings, there exists no depiction of plaintiff Teofilo, Sr. engaging in the intentional or deliberate physical touching of a law enforcement officer, which proves the Defendants, including Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu, lacked probable cause to arrest or prosecute plaintiff Teofilo, Sr.

60.     Said video evidence also conclusively demonstrates that plaintiff Teofilo, Sr. never resisted arrest and that he never committed any other crime or violation of the law.

61.     Plaintiff Teofilo, Sr. was an innocent bystander to the incident and was subjected to a false arrest and false imprisonment by, or at the direction of, Defendants, including Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu.

62.     Plaintiff Teofilo, Sr. was attacked and brutally beaten for the innocuous act of exiting his residential home.

63.     Plaintiffs were each wrongfully grabbed, physically restrained, seized, detained and arrested by, or at the direction of, defendants, including Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu, as there existed no probable cause or other legal justification for Plaintiffs' unconsented to confinement or the restrictions placed upon their liberty and freedom of movement.

64.     The subsequent fraudulent charges that were commenced against plaintiff Teofilo, Sr. were borne out of malice and constituted an egregious miscarriage of justice.

65.     Prosecutors declined to prosecute plaintiff Jorge for any crimes or offenses due to the clear lack of any probable cause for his initial arrest and any subsequent criminal prosecution.

66.     As a result of the false information and spurious allegations submitted to prosecutors by, or at the direction of, defendants, including Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu, Plaintiffs Lazaro, Ignacio and Teofilo, Sr. were subjected to malicious prosecutions, which each culminated in *bona fide* favorable terminations of the original judicial proceedings, via the *nolle prosequi* of all adverse charges.

67.     Plaintiffs, Lazaro, Ignacio and Teofilo, Sr., were each caused to suffer further deprivations upon the respective liberties, as said plaintiffs were each unlawfully confined against their wills after judicial process had been commenced, because monetary bail had been set for said plaintiffs.

68.     Defendants, including Perez, Sierra, Rizo, Young, Grimm, McKie, Membreno, Vallejos, Clark, Encinosa, Sorrel, Fernandez and Koivu, caused the judicial proceedings against plaintiffs Lazaro, Ignacio and Teofilo, Sr. to be commenced and maintained thereafter, despite being fully

aware of their abject innocence, because of said defendants' desires to use their arrests and subsequent prosecutions as leverage against their true target and suspect, Teofilo Morales, Jr., to obtain credit for additional arrests and to justify the defendants' clear use of excessive and unwarranted force in the apprehension and confinement of confinement.

## A DISTURBING CUSTOM OF MDPD OFFICIALS ABUSING THEIR POWER

69.     Prior to February 24, 2017, Miami-Dade County, by and through their police department, developed policies and customs exhibiting deliberate indifference to the constitutional rights of their citizenry, that was the moving force behind the excessive force used against Teofilo Sr., Jorge, Ignacio, and Lazaro. Evidence of Miami-Dade County's history of abuse is shown by the following examples:

70.     In 2015 the Miami-Dade Police Department falsely accused Deandre Charles of murdering New York City Rabbi Joseph Raskin. As a result, Mr. Charles was caused to be wrongfully detained for nearly a year behind bars before prosecutors discontinued the charges against him. A Miami New Times investigation states that State Attorney Katherine Fernandez Rundle and Miami-Dade County Detective Michael Brajdic had knowledge of Charles' innocence and still continued with grand jury proceedings. To date, no Miami-Dade County officials have received any punishment.

71.     In a March 2017 incident, Miami-Dade County police officers William Baskins and Oliver Mayorga were caught on video violently arresting an unarmed suspect named Ephraim Casado. Local 10 News reports prosecutors dropped the case after it appeared officers "were less than truthful about the actual events that occurred during the incident." The Miami New Times reports

that both officers are still working for the Miami-Dade Police Department and were never disciplined or charged in the case.

72.     In an August 2017 incident, the Miami Herald reports that Miami-Dade County police pointed their guns at real estate agent Robert Menard on his way to a Miami Dolphins preseason game for no reason other than the color of his skin. A civil rights lawsuit, regarding these events and occurrences, is presently pending in federal court.

73.     The same Miami Herald article reports that St. Thomas University student Thomas Payne was on his way to his second job coaching youth football, when a Miami-Dade County police officer, Carlos Angulo, pulled him over, pointed his gun at him, arrested him without reading his Miranda Rights, and kept him in a hot police car with no windows open for an extended period of time. A lawsuit is pending on this matter;

74.     In an April 2018 memorandum, it was revealed State Attorney Katherine Fernandez Rundle refused to charge Miami Dade Police Officer Eduardo Pares after he fatally shot Anthony Ford, an unarmed 27-year-old. CBS Miami reports that the incident sparked protests in Miami-Dade County and family members of Ford have said, "he had no weapon and was shot for no reason." Miami-Dade Police Director Juan Perez and Miami-Dade P.B.A. President Steadman Stahl publicly defended Officer Eduardo Pares' use of deadly force against the unarmed suspect;

75.     A scathing report by the ACLU of Florida in July 2018 found that black-Hispanics are disproportionately targeted by Miami-Dade Police Department and comprise four times more of the arrested population than their share of the county population. The same report stated that nuisance arrests are more prevalent in communities of color in Miami-Dade. Further, the July 2018 ACLU report shows Miami-Dade County sends the largest population of inmates to Florida state prisons and operates the largest jail system in the country;

76.     In October 2018, Miami-Dade police Sgt. Manuel Regueiro was arrested after being caught on tape unnecessarily punching a handcuffed suspected in the face. NBC6 reports that Sergeant Regueiro remains with the Miami-Dade County police force. This comes after a 2009 incident where a woman named Sarah Myles accused Regueiro and other officers of fabricating evidence against her. She also said Regueiro broke her wrist by tackling her, according to the Miami New Times. Her charges were dropped in 2011 and Sgt. Regueiro reportedly faced no discipline;

77.     In that same October 2018 incident, Officer Alexander Gonzales was charged with a felony for attempting to tamper or destroy the surveillance footage that captured Sgt. Regueiro's assault against the suspect. NBC6 reports that Officer Gonzalez remains with the Miami-Dade County police force.

78.     In 2018, the Miami-Dade County Commission voted to reinstate the citizens' Independent Review Panel for police oversight in light of the disturbing history of abuse by Miami Dade-County through its police force, but Miami-Dade County Mayor Carlos Gimenez vetoed the move. Miami-Dade Police Department Director Juan Perez reportedly stated that the police oversight panel was "not needed."

79.     In January of 2019 CBS Miami reported that a Miami-Dade police officer named Sgt. Gustavo De Los Rios was arrested for kicking a teenager named David Brown. Video evidence of the incident shows several officers arresting Brown when De Los Rios kicked him and dropped his knee on Brown's neck. CBS News reports De Los Rios was relieved of duty with pay. This attack follows a CBS report that De Los Rios was arrested for domestic abuse in an incident with his ex-wife in 2017. A 2015 Miami Herald report also shows that De Los Rios abused his power to find out about his ex-wife's travel plans but did not face discipline.

80.     In March 2019 a Miami-Dade police officer named Alejandro Giraldo was arrested for violently abusing an unarmed woman named Dyma Loving during an incident that has received national attention. ABC News reports that Officer Alejandro Giraldo pushed Loving against a fence before grabbing her by her neck and pulling her to ground. Giraldo then reportedly made false statements about what happened. Despite Officer Giraldo facing charges, Miami-Dade County Police Department Director Juan Perez called Giraldo's arrest 'disappointing,' according to ABC News.

81.     The pattern of actions by Defendant County, indicates that the Defendant officers and sergeants who violated Plaintiffs' rights acted in accordance with policies that have been tacitly endorsed by Defendant County, Defendant Perez, and other high-ranking officials.

82.     As a result of the aforementioned policies and customs, Defendant County's officers believed their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned but would instead be tolerated.

83.     The continued timeline of abuse and deliberate indifference to the rights of the citizenry by Defendant County and Defendant Perez by and through the MDPD, shows a corrective action was never initiated as a matter of policy.

## FIRST CAUSE OF ACTION
Unlawful Search and Seizure Under 42 U.S.C. § 1983
Against All Individual Defendants in their Individual Capacities
(On behalf of all Plaintiffs)

84.     Plaintiffs re-allege and re-aver Paragraph 26 through 63 of this Complaint, as if fully set forth herein.

85.     Defendants subjected plaintiffs and their property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

86.     Plaintiffs were conscious and fully aware of the unreasonable searches and seizures to their persons and property.

87.     Plaintiffs did not consent to the unreasonable searches and seizures to their persons or property.

88.     The unreasonable searches and seizures to plaintiffs' persons and property were not otherwise privileged.

89.     Accordingly, defendants violated plaintiffs' rights to be free from unreasonable searches and seizures, pursuant to the Fourth Amendment to the United States Constitution.

90.     As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.


**SECOND CAUSE OF ACTION**
False Arrest Under Florida State Law Against
Defendant County and All Individual Defendants in their Individual and Official Capacities
(On behalf of all Plaintiffs)

91.      Plaintiffs re-allege and re-aver Paragraph 26 through 63 of this Complaint, as if fully set forth herein.

92.     Defendants unlawfully restrained Plaintiffs without legal authority and against their will by forcing each one of them to the pavement, twisting their arms behind their back, handcuffing them, and confining Plaintiffs to a jail cell.

93.     Defendants subjected Plaintiffs to a false arrest, false imprisonment, and deprivation of liberty without a valid warrant or probable cause.

94.     Plaintiffs were conscious of their confinement.

95.     Plaintiffs did not consent to their confinement.

96.     Plaintiffs' arrest and false imprisonment were not otherwise privileged.

97.     Defendants acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard for Plaintiffs' rights.

98.     Alternatively, and to the extent that Defendants did not act in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard for Plaintiffs' rights, Plaintiffs allege that Defendants acted within the scope of their employment and are liable in their official capacities.

99.     Defendant County, as the employer of the individually named defendants herein, is responsible for their wrongdoings under the doctrines of *respondeat superior* and vicarious liability.

100.    As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

101.    This is a state law claim for damages in excess of the jurisdictional amount.

### THIRD CAUSE OF ACTION
False Imprisonment Under Florida State Law Against
Defendant County and All Individual Defendants in their Individual and Official Capacities
(On behalf of all Plaintiffs)

102.     Plaintiffs re-allege and re-aver Paragraph 26 through 63 of this Complaint, as if fully set forth herein.

103.    Defendants unlawfully restrained Plaintiffs without legal authority and against their will by forcing each one of them to the pavement, twisting their arms behind their back, handcuffing them, and confining Plaintiffs to a jail cell.

104.    Defendants subjected Plaintiffs to a false arrest, false imprisonment, and deprivation of liberty without a valid warrant or probable cause.

105.    Plaintiffs were conscious of their confinement.

106.    Plaintiffs did not consent to their confinement.

107.    Plaintiffs' arrest and false imprisonment were not otherwise privileged.

108.    Defendants acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard for Plaintiffs' rights.

109.    Alternatively, and to the extent that Defendants did not act in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard for Plaintiffs' rights, Plaintiffs allege that Defendants acted within the scope of their employment and are liable in their official capacities.

110.    Defendant County, as the employer of the individually named defendants herein, is responsible for their wrongdoings under the doctrines of *respondeat superior* and vicarious liability.

111.    As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

112.    This is a state law claim for damages in excess of the jurisdictional amount.

## FOURTH CAUSE OF ACTION
False Arrest Under 42 U.S.C. § 1983 Against
All Individual Defendants in their Individual Capacities
(On behalf of all Plaintiffs)

113.    Plaintiffs re-allege and re-aver Paragraph 26 through 63 of this Complaint, as if fully set forth herein.

114.    The Defendants violated the Fourth and Fourteenth Amendments to the U.S. Constitution by intentionally, wrongfully and illegally grabbing, seizing, handcuffing, arresting, detaining and imprisoning Plaintiffs.

115.    Defendants deliberately restrained Plaintiffs without legal authority and against their will by twisting their arms behind their back, rear handcuffing them and confining them to a jail cell.

116.    The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiffs was carried out without a valid warrant, without Plaintiffs' consent, and without probable cause or reasonable suspicion.

117.    At all relevant times, Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiffs.

118.    As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

**FIFTH CAUSE OF ACTION**
False Imprisonment Under 42 U.S.C. § 1983 Against
All Individual Defendants in their Individual Capacities
(On behalf of all Plaintiffs)

119.    Plaintiffs re-allege and re-aver Paragraph 26 through 63 of this Complaint, as if fully set forth herein.

120.    The Defendants violated the Fourth and Fourteenth Amendments to the U.S. Constitution by intentionally, wrongfully and illegally grabbing, seizing, handcuffing, arresting, detaining and imprisoning Plaintiffs.

121.    Defendants deliberately restrained Plaintiffs without legal authority and against their will by twisting their arms behind their back, rear handcuffing them and confining them to a jail cell.

122.    The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiffs was carried out without a valid warrant, without Plaintiffs' consent, and without probable cause or reasonable suspicion.

123.    At all relevant times, Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiffs.

124.    As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## SIXTH CAUSE OF ACTION
Assault Under Florida State Law Against
Defendant County and All Individual Defendants in their Individual and Official Capacities
(On behalf of All Plaintiffs)

125.    Plaintiffs re-allege and re-aver Paragraph 26 through 63 of this Complaint, as if fully set forth herein.

126.    At all relevant times, Defendants caused Plaintiffs to fear for their physical well-being and safety and placed them in apprehension of immediate harmful and/or offensive physical contact.

127.    Defendants intentionally engaged in and subjected Plaintiffs to immediate harmful and/or offensive physical contact and battered them without their consent or legal justification to do so.

128.    Defendants aggressively pointed their firearms toward plaintiffs as defendants approached them with their outstretched arms.

129.    Defendants proceeded to unlawfully engage in physical contact with plaintiffs by violently grabbing plaintiffs, forcefully contorting their arms behind their backs and then affixing metal handcuffs to their wrists in an excessively tight manner.

130.    Defendants aggressively slammed Plaintiff Teofilo, Sr.'s head into a parked van, violently tackled him to the ground, and then forcibly handcuffed him in an excessively tight manner, all as he was crying out in shear agony for the defendants to stop.

131.    Defendants violently bashed Plaintiff Ignacio's head face-first into cement ground and forcefully struck him with closed fists or other hard objects, while handcuffing him in an excessively tight fashion.

132.    Defendants acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard for Plaintiff's rights.

133.    Alternatively, and to the extent that Defendants did not act in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard for Plaintiffs' rights, Plaintiffs allege that Defendants acted within the scope of their employment and are liable in their official capacities.

134.    Defendant County, as employers of the individual defendants, are responsible for their wrongdoings under the doctrines of *respondeat superior* and vicarious liability.

135.    As a direct and proximate result of this breach, Plaintiffs sustained the damages hereinbefore alleged.

136.    This is a state law claim for damages in excess of the jurisdictional amount.

<u>**SEVENTH CAUSE OF ACTION**</u>
Battery Under Florida State Law Against
Defendant County and All Individual Defendants in their Individual and Official Capacities
(On behalf of All Plaintiffs)

137.    Plaintiffs re-allege and re-aver Paragraph 26 through 63 of this Complaint, as if fully set forth herein.

138.    At all relevant times, Defendants caused Plaintiffs to fear for their physical well-being and safety and placed them in apprehension of immediate harmful and/or offensive physical contact.

139.    Defendants intentionally engaged in and subjected Plaintiffs to immediate harmful and/or offensive physical contact and battered them without their consent or legal justification to do so.

140.    Defendants aggressively pointed their firearms toward plaintiffs as defendants approached them with their outstretched arms.

141.    Defendants proceeded to unlawfully engage in physical contact with plaintiffs by violently grabbing plaintiffs, forcefully contorting their arms behind their backs and then affixing metal handcuffs to their wrists in an excessively tight manner.

142.    Defendants aggressively slammed Plaintiff Teofilo, Sr.'s head into a parked van, violently tackled him to the ground, forcibly handcuffed him in an excessively tight manner, and then dragged his handcuffed body across the concrete pavement, all as he was crying out in shear agony for the defendants to stop.

143.    Defendants violently bashed Plaintiff Ignacio's head face-first into cement ground and forcefully struck him with closed fists or other hard objects, while handcuffing him in an excessively tight fashion.

144.    Defendants acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard for Plaintiff's rights.

145.    Alternatively, and to the extent that Defendants did not act in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard for Plaintiffs' rights, Plaintiffs allege that Defendants acted within the scope of their employment and are liable in their official capacities.

146.    Defendant County, as the employer of the individual defendants, are responsible for their wrongdoings under the doctrines of *respondeat superior* and vicarious liability.

147.    As a direct and proximate result of this breach, Plaintiffs sustained the damages hereinbefore alleged.

148.    This is a state law claim for damages in excess of the jurisdictional amount.

## EIGHTH CAUSE OF ACTION
Excessive Force Under 42 U.S.C. § 1983
Against All Individual Defendants in their Individual Capacities
(On behalf of All Plaintiffs)

149.    Plaintiffs re-allege and re-aver Paragraph 26 through 63 of this Complaint, as if fully set forth herein.

150.    The Defendants violated Plaintiffs' rights under the Fourth and Fourteenth Amendments, because they used excessive and unreasonable force without Plaintiffs' consent, justification or other legal cause.

151.    Defendants engaged in and subjected Plaintiffs to immediate harmful and/or offensive touching and battered them without their consent.

152.    Defendants proceeded to unlawfully engage in physical contact with plaintiffs by violently grabbing plaintiffs, forcefully contorting their arms behind their backs and then affixing metal handcuffs to their wrists in an excessively tight manner.

153.    Defendants violently apprehended Teofilo Sr., slammed his head against a parked vehicle, tackled him, and forcibly handcuffed him as he screamed in pain on the concrete ground, all causing Teofilo Sr. to suffer substantial pain and injury to his person.

154.    Defendants dragged the 75-year-old Teofilo Sr. by his arms across the pavement pulling his handcuffed shoulders as far as physically possible, causing Plaintiff to further suffer substantial physical pain and injury to body and arms.

155.    Defendants violently kneed Plaintiff Ignacio's face into the pavement by pressing down on Ignacio's neck, causing Ignacio to suffer substantial pain and injury to his person.

156.    Defendants also violently struck Plaintiff Ignacio with their closed fists or other hard objects during his apprehension, causing further injury and pain to Plaintiff Ignacio.

157.   As a direct and proximate result of this breach, Plaintiffs sustained the damages hereinbefore alleged.

**NINTH CAUSE OF ACTION**
Malicious Prosecution Under Florida State Law
Against All Individual Defendants in their Individual Capacities
(On behalf of Plaintiffs, Lazaro, Ignacio and Teofilo, Sr.)

158.   Plaintiffs re-allege and re-aver Paragraph 26 through 68 of this Complaint, as if fully set forth herein.

159.   Original judicial proceedings were commenced against Plaintiffs in the form of criminal prosecutions within the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, under separate and distinct case numbers respective to each Plaintiff.

160.   Defendants were the legal causes of the original judicial proceedings, as each forwarded or conveyed false, fictitious and fabricated allegations, police reports and statements to prosecutors, which formed the entire bases for the initiation and maintenance of the criminal prosecutions against Plaintiffs, or directed that said acts be perpetrated.

161.   The termination of the original judicial proceedings, via *Nolle Prosequi*, constituted *bona fide* terminations of the proceeding in favor of Plaintiffs, as said dispositions were due solely to Plaintiffs' innocence, regarding all adverse charges.

162.   There was an absence of probable cause for the original proceeding against Plaintiffs, as they had committed no crimes or violations of the law.

163.   Defendants lacked probable cause to believe Plaintiffs were guilty or that the prosecutions would succeed.

164.   Defendants acted with malice, which may be inferred in the absence of probable cause.

165.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs suffered significant damages, including deprivations to their liberty and freedom of movement.

166.     Defendants acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard for Plaintiffs' rights.

167.     As a direct and proximate result of this breach, Plaintiffs sustained the damages hereinbefore alleged.

168.     This is a state law claim for damages in excess of the jurisdictional amount.

**TENTH CAUSE OF ACTION**
Malicious Prosecution Under 42 U.S.C. § 1983 Against
All Individual Defendants in their Individual and Official Capacities
(On Behalf of Plaintiffs, Lazaro, Ignacio and Teofilo, Sr.)

169.     Plaintiffs re-allege and re-aver Paragraph 26 through 68 of this Complaint, as if fully set forth herein.

170.     Original judicial proceedings were commenced against Plaintiffs in the form of a criminal prosecution within the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, under their respective case numbers.

171.     Defendants were the legal causes of the original judicial proceedings, as each forwarded spurious information to prosecutors, caused false police reports to be filed or offered false statements against Plaintiffs that were intended to wrongfully implicate plaintiffs in the commission of the aforementioned crimes or offenses, or said acts were perpetrated at the direction of defendants.

172.     The termination of the original judicial proceedings, via *Nolle Prosequi*, constituted *bona fide* terminations of the proceeding in favor of Plaintiffs, as said dispositions affirmatively indicated Plaintiffs' innocence, regarding all adverse charges.

173.    There was an absence of probable cause for the original proceedings.

174.    Defendants lacked probable cause to believe Plaintiffs were guilty or that the prosecutions would succeed.

175.    Defendants acted with malice.

176.    In the absence of probable cause, malice may be inferred.

177.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs suffered significant damages.

178.    Defendants violated Plaintiffs' Fourth and Fourteenth Amendment rights by causing Plaintiffs to have monetary bail set, to remain incarcerated after their arraignments, to have restrictions placed upon their liberty and freedom of movement, and to be compelled to appear in court to contest the adverse charges that were wrongfully filed against them.

179.    As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

### ELEVENTH CAUSE OF ACTION
Abuse of Process Under Florida State Law
Against All Individual Defendants in their Individual Capacities
(On Behalf of Plaintiffs, Lazaro, Ignacio and Teofilo, Sr.)

180.    Plaintiffs re-allege and re-aver Paragraph 26 through 68 of this Complaint, as if fully set forth herein.

181.    Defendants made an illegal, improper or perverted use of the criminal process issued against Plaintiffs.

182.    Defendants possessed ulterior motives or purposes in exercising such illegal, improper or perverted use of process.

183.    As a result of defendants illegal, improper or perverted use of process, Plaintiffs suffered damages.

28

184.     After Plaintiffs' arraignments and releases from custody, Defendants knowingly submitted perjurious sworn statements and arrest reports with fabricated information against Plaintiffs, or directed such acts to be committed, to incur favor or additional benefits from their superior officers and defendant County, to use Plaintiffs' ongoing criminal prosecutions as leverage to compel their true target and suspect, Teofilo Morales, Jr., to confess or plead guilty to the crimes that were being alleged against him, and also to conceal and justify defendants' improper use of excessive force, as well as the unlawful seizures and arrests of the plaintiffs.

185.     Defendants acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard for Plaintiffs' rights.

186.     As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

187.     This is a state law claim for damages in excess of the jurisdictional amount.

## TWELFTH CAUSE OF ACTION
Abuse of Process Under 42 U.S.C. § 1983
Against All Individual Defendants in their Individual Capacities
(On Behalf of Plaintiffs, Lazaro, Ignacio and Teofilo, Sr.)

188.     Plaintiffs re-allege and re-aver Paragraph 26 through 68 of this Complaint, as if fully set forth herein.

189.     Defendants made an illegal, improper or perverted use of process.

190.     Defendants possessed ulterior motives or purposes in exercising such illegal, improper or perverted use of process.

191.     As a result of defendants' illegal, improper or perverted use of process, Plaintiffs suffered damages.

192.     After Plaintiffs' arraignments and releases from custody, Defendants knowingly submitted perjurious sworn statements and arrest reports with fabricated information against Plaintiffs, or directed such acts to be committed, to incur favor or additional benefits from their superior officers and defendant County, to use Plaintiffs' ongoing criminal prosecutions as leverage to compel their true target and suspect, Teofilo Morales, Jr., to confess or plead guilty to the crimes that were being alleged against him, and also to conceal and justify defendants' improper use of excessive force, as well as the unlawful seizures and arrests of the plaintiffs.

193.     Defendants' actions compelled Plaintiffs to continue to contest the false criminal charges against them, until each criminal proceeding was favorably terminated, via *Nolle Prosequi*.

194.     Accordingly, defendants violated plaintiffs' rights, under the Fourth and Fourteenth Amendments to the United States Constitution.

195.     As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

### THIRTEENTH CAUSE OF ACTION
Failure to Intervene Under 42 U.S.C. § 1983
Against All Individual Defendants in their Individual Capacities
(On Behalf of All Plaintiffs)

196.     Plaintiffs re-allege and re-aver Paragraph 26 through 63 of this Complaint, as if fully set forth herein.

197.     Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity and the capability to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

198.     Accordingly, the Defendants who failed to intervene violated plaintiffs' rights, under the Fourth and Fourteenth Amendments.

199.    As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

**FOURTEENTH CAUSE OF ACTION**
Negligent Hiring and Retention Under Florida State Law
Against Defendant County and Defendant Perez in his Individual and Official Capacities
(On Behalf of All Plaintiffs)

200.    Plaintiffs re-allege and re-avers Paragraph 26 through 83 of this Complaint, as if fully set forth herein.

201.    Defendants, County and Perez, owed a duty to those who may come into contact with its employee defendants to conduct an appropriate investigation, prior to hiring the individual MDPD defendants and failed to do so.

202.    An appropriate investigation would have revealed the unsuitability of the individual MDPD defendants for employment assignments requiring interaction with the public or crowd control, for employment as law enforcement officers or for employment in general.

203.    It was unreasonable for Defendants, County and Perez, to hire the individual MDPD defendants in light of the information they knew or should have known.

204.    Defendants, County and Perez, were required to properly and adequately retain and supervise the individual MDPD defendants to ensure that they remained fit for employment in a position requiring interaction members of the public, suitable for an assignment involving crowd control or as law enforcement officers and failed to do so.

205.    Defendants, County and Perez, knew, or should have known, that the individual MDPD defendants were not fit for employment as law enforcement officers, to handle crowd control situations, or interact with members of the public and Defendants failed to take any action, such as investigation, reassignment, discipline, or discharge.

206.    Defendants, County and Perez, placed the individual MDPD defendants in a position where they could inflict foreseeable harm.

207.    Defendants, County and Perez, knew or should have known of its employee defendants' dangerous propensity for violating the individual civil rights of members of the public.

208.    Defendants, County and Perez, failed to take reasonable measures in hiring and retaining its employee defendants that would have prevented the aforesaid injuries to Plaintiffs.

209.    As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

210.    This is a state law claim for damages in excess of the jurisdictional amount.

### FIFTEENTH CAUSE OF ACTION
Negligent Training and Supervision Under Florida State Law
Against Defendants, County and Perez,
(On Behalf of All Plaintiffs)

211.    Plaintiffs re-allege and re-aver Paragraph 26 through 83 of this Complaint, as if fully set forth herein.

212.    Defendants, County and Perez, owed a duty to the those who may come into with the MDPD defendants, to properly and adequately train the individual MDPD defendants, so that they would be able to interact with members of the public, without violating their civil rights.

213.    Defendants, County and Perez, were required to properly and adequately retain and supervise the individual MDPD defendants to ensure that they remained fit for employment in a position requiring interaction members of the public, suitable for an assignment involving crowd control or as law enforcement officers and failed to do so.

214.    Defendants, County and Perez, knew, or should have known, that the individual MDPD defendants were not fit for employment as law enforcement officers, or in general, particularly not

to handle crowd control situations, or to interact with members of the public, and Defendants failed to take any action, such as an investigation, reassignment, discipline, or discharge.

215.   Defendants, County and Perez, placed the individual MDPD defendants in a position where they could inflict foreseeable harm.

216.   Defendants, County and Perez, knew or should have known of its employee defendants' propensity for violating the individual rights granted under the United States Constitution and the laws of the State of Florida, prior to the injuries incurred by Plaintiffs.

217.   Defendants, County and Perez, failed to take reasonable measures in training and supervising its employee defendants that would have prevented the aforesaid injuries to Plaintiffs.

218.   As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

219.   This is a state law claim for damages in excess of the jurisdictional amount.

## SIXTEENTH CAUSE OF ACTION
Governmental "*Monell*" Liability Under 42 U.S.C. § 1983
Against Defendant County and Defendant Perez in his Individual Capacity
(On Behalf of All Plaintiffs)

220.   Plaintiffs re-allege and re-avers Paragraph 26 through 83 of this Complaint, as if fully set forth herein.

221.   Defendants County and Perez maintained official or unofficial policies, customs or practices that caused Plaintiffs to be deprived of their Constitutional rights.

222.   Defendants County and Perez were aware of the individual MDPD defendants' propensities to arrest individuals without probable cause, to apply excessive force during arrests, and to maliciously prosecute members of the citizenry.

223.    Defendants County and Perez were aware and put on notice of the individual MDPD defendants' unlawful propensities due to prior lawsuits, psychological exams, civilian complaints, internal performance reviews, news reports, internal whistleblowers, or their own personal observations.

224.    Despite defendants,' County's and Perez,' knowledge regarding the individual MDPD defendants' severe deficiencies and unsuitability for employment as law enforcement officers, especially in situations involving interactions with members of the public, defendants County and Perez have demonstrated their deliberate indifference towards the rights of those who may come into contact with the individual MDPD defendants by assigning them to interact with members of the public in a crowd control situation without first correcting their violative predilections.

225.    Defendants,' County's and Perez,' failures to take any action to correct the Constitutionally offensive behavior of the individual MDPD defendants is tantamount to its tacit approval or their deliberate indifference towards such misconduct.

226.    Defendants County and Perez have failed to properly train the individual MDPD defendants to properly interact with members of the public, as it is obvious that the MDPD defendants cannot simultaneously enforce the law and refrain from violating the Constitutional rights of those they come into contact with.

227.    Defendants County and Perez have failed to train the individual MDPD defendants to properly identify the presence of probable cause and to apply only an amount of force that is reasonable under the circumstances, as clearly evidenced by their interactions with Plaintiffs.

228.    The failure to train the MDPD defendants regarding such basic civil rights, coupled with assigning the individual MDPD defendants to interact with members of the public, virtually assures that Constitutional violations will occur and demonstrates defendants,' County's and

Perez,' deliberate indifference towards the rights of those who may come into contact with the individual MDPD defendants.

229.     Defendants,' County's and Perez,' failures to adequately train the individual defendants are obvious in light of the individual MDPD defendants' gross and egregious violations of Plaintiffs' Fourth and Fourteenth Amendment rights.

230.     Defendants County and Perez disregarded known or obvious consequences of hiring the individual MDPD defendants to such an extent that it demonstrated defendant County's deliberate indifference to the rights of those who may come into contact with the individual MDPD defendants.

231.     Defendants County and Perez knew, or should have known, that the individual MDPD defendants were not suitable to be hired as law enforcement officers, because of their prior work histories, psychological makeups, general dispositions, references, background checks and their own personal interactions with the individual MDPD defendants.

232.     Despite being aware that the individual MDPD defendants would be highly likely to violate the Constitutional rights of those they come into contact with, defendants County and Perez decided to hire them, regardless.

233.     Defendant County's and Perez' employees' illegal practices are so consistent and widespread that they constitute customs or usages of which a supervising policymaker must have been aware of and took no action to correct.

234.     Defendants County and Perez, as well as their policymakers failed to provide adequate training or supervision to subordinates to such an extent that it is tantamount to their deliberate indifference towards the rights of those who come into contact with the individual MDPD defendants.

235.    Defendants' County's and Perez' employees engaged in such egregious and flagrant violations of Plaintiffs' Constitutional rights that the need for enhanced supervision and training is obvious and therefore tantamount to a display of deliberate indifference by Defendant County and its policymakers towards the rights of individuals who come into contact with defendants' employees.

236.    Defendants' County's and Perez' conduct therefore violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution.

237.    As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

    **WHEREFORE**, Plaintiffs respectfully request judgment against Defendants, jointly and severally, as follows:

a)    In favor of Plaintiffs in an amount to be determined by a jury for each of Plaintiffs' causes of action;

b)    Awarding Plaintiffs punitive damages in an amount to be determined by a jury;

c)    Awarding Plaintiffs compensatory damages in an amount to be determined by a jury;

d)    Awarding Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

**e)**    Granting such other and further relief, as this Court may deem just and proper.

### JURY DEMAND

    Plaintiffs demand a trial by jury.

    Dated: February 23, 2021

                                    Respectfully submitted,

                                    /s/ *Anthony C. Hevia*_____
                                    **Anthony C. Hevia, Esq.**

36

Fla. Bar Number: 41148
**Hevia Law Firm**
*Attorneys for Plaintiffs*
2525 Ponce de Leon Blvd., Suite 300
Coral Gables, Florida 33134
T: (786) 441-5120
F: (786) 743-5600
Anthony@HeviaLawFirm.com